We will proceed with the next appeal. Good morning. It looks like we're all ready to proceed. This is MSP Recovery v. Hanover and Francisco Zancone is here for the appellants and for the appellees. Bryce Friedman is here and present for questions, but not arguing are Stephen Levy, Lori McAllister, Laura Besbenik. And it looks like we're ready to proceed. Mr. Zancone, you may begin. May it please the court. Good morning. Jessica Zancone on behalf of the appellants and plaintiffs below. MSP Recovery Claims Series LLC, MSP AP Claims 1 LLC and Series B. We're having a little hard time hearing you. If you could turn your volume up and get closer to your speaker. Okay. Is that better, Your Honor? That's better. Thank you. Okay. If it happens again, please let me know. The issue presented here is one of objective reasoning, specifically whether the defendants were objectively reasonable in removing and contesting, remand of appellants' complaints for pure bills of discovery. We respectively submit that the coordinated removal efforts, unsupported legal theories, and largely speculative, irrelevant evidence that was used and relied upon in the proceedings of the poll result in those removals having been objectively unreasonable. So much so that 10 district court judges over the span, over a span of 29 individual cases, ultimately determined that those removals were wholly without merit, one calling the defendants' mountain controversy analysis frank speculation. The result of those removals was to delay the underlying proceedings by months, impose substantial costs on the appellants, and unjustifiably tax the judicial resources of the district courts. Under the circumstances, given the objective unreasonableness and the cost resulting, we respectively submit that the district court erred, denying the plaintiffs' request for attorney's fees under 1447C, and that decision should be made. I think it's... Did any of the 10 district court judges that remanded, did any of them impose fees? None of them imposed fees, Your Honor. But in this circumstance, I think it's useful, given that fact, to take a look at the history of these particular cases. Ultimately, the defendants had the benefit of at least eight prior remands prior to filing their notices of removal. With respect to the opposite... This is Judge Lagoa. Let me ask you a question, though. The district court judges are not bound by any... Judge Lagoa, I apologize, but you were breaking up. Can you hear me now? I can. The district court judges are not bound by the ruling of another district court judge, correct? Chuck, can you hear me? I can hear you, Mr. Zacon. Did you hear Judge Lagoa's question? Unfortunately, it was coming in and out, but I think that I got the basic question. The district judge wasn't bound by any other district judge's decision, right? That's the question. Under the circumstances, no. Of course, the district court judges were not bound by the decisions. But we've submitted, and as we've raised in our briefs, that the decisions of the district court were entitled to wait. And certainly were highly persuasive of the nature of the underlying case, informative of the insufficiency of the evidence and theories on amount and controversy that were being advanced by the defendants in the case. And as a result of one after another, and in this instance, really distinguishable from the cases relied upon by the defendants in their briefing, the district courts were unanimous in this instance, unanimous in their remand. And there is really no case to be found that presents that type of robust record of unanimity among district courts in regarding removals as being without, as failing to support subject matter, an exercise of subject matter jurisdiction. It's that, although they are not binding, the critical mass of district court decisions on these precise issues regarding the same complaint, the same underlying cause of action, defendants in the same position. And I might add, really the identical notices of removal. A review of the record will show that the notices of removal were really carbon copies of one another. The theories of amount and controversy were carbon copies of one another. This is a, this was a coordinated effort to remove these cases, the defendants were in full synchrony. And once it became clear after it certainly at some point, at some point, there's a limit. Are you able to cite a controlling case in this circuit or the Supreme Court, which would indicate that a complaint for pure bill of discovery cannot be removed to federal court. I'm sorry, I'm sorry, Your Honor, you but you slightly broke up with mine, but was the question that the, is there a US Supreme Court case that foreclosed removal circuit or a circuit. That says a complaint for a pure bill of discovery cannot be removed to federal court. You're unable to cite a case that says that are you. There is no case, there is no, there is no circuit court case or Supreme Court case that says without, without question that a pure bill of discovery is as a, as a matter of law is something that is, that is, is not subject to removal. But at the end of the day, the district courts discretion to award attorneys fees is not is not unfettered. It's something that is bound by a very specific standard, one that's been set by the by the Supreme Court in the Martin case from 2005. And that is one of objective reasonableness. And so, under the circumstances, objective reasonableness, and the clear and obvious invalidity of a notice of removal is not one that would require is not a standard that requires there to be a foreclosing decision, or a Supreme Court precedent on point and controlling with respect to the issue. There is a question. Mr. Zanko, explain to me how these bills of discovery are supposed to work. How is this litigation supposed to proceed in the state court? I think it's, I think it's, it's useful in response to that question to get back and look at plaintiff MSP recovery claims is an entity that takes assignment of recovery rights and pursues recoveries under various various state and federal statutes. On behalf of health care providers, Medicare Advantage organization, this particular Medicaid, Medicaid, which is an essential. What is happening here is the plaintiff. Really, the plaintiff's initiatives, the assigners are what are called deemed under the Florida statutes. Very similar. The last the Medicare side of. And Medicare advantage. So, what, what the problem with these cases is that ultimately the Medicare care is the Medicaid. Organizations are. They really do not have available. What's going on with certain. And they're overlapping. Information. That is all. And what are you going to do with the information? So you're seeking information. The objective in the information, though, is to ultimately seek recovery. Right. Potentially, potentially, it's ultimately to determine whether or not there is a viable claim for recovery against this particular defendant. Alternatively, against someone that the defendant has paid, and that's something that's been made clear in the, in the complaint and really in subsequent in subsequent advancement in the, in these cases. Very similar to what this court encountered in an MSP recovery or MSP claims one versus tenant. In many instances, Medicaid care organization, like a Medicare advantage organization will receive bills that are also being sent to a no fault to a no fault carrier. The no fault carrier will thereby will will thereafter pay the bills that's been bill that's been received. While we do well, ultimately, the Medicaid care, or, and it's an organization. Under that circumstance, we would be looking for payout sheets as one of the items that's been requested. Payout sheets information regarding the underlying policy, actual Medicare, the actual information regarding the injuries. By the no fault carrier, such that we can identify the party to go after. So, this case is in its very nascent stage. That's why really it isn't judge Wilson was absolutely correct. There is not a, not a case of starting the removal of pure bill of discovery, but all pure bills of discovery are not created. And in this instance, the courts, the underlying analogy, I think, was really on point. Because in that case, what we're looking at is a request for discovery. And the value of the discovery was really uncertain and immeasurable. And that's what bore out in this case. Really, the dependence established. You receive the cause of action. And a defendant, there's no reference to actual Medicare. It might be. This is really a case. It is about really about. It's about information. And the value of that information is not readily ascertainable. And certainly, it was not ascertainable from. I'm expired. Thank you. Mr. Zinco. You've reserved some time for rebuttal, but I will tell you that we did have a hard time hearing. I think we've got your argument. We understand your argument, but we did have a hard time hearing it, but you've reserved some time for rebuttal. And now we'll hear from Mr. Friedman on behalf of the police. Good morning, your honors. May it please the court. My name is Bryce Friedman. My firm is Simpson Thatcher. I'm arguing for defendant appellee insurers in these consolidated appeals. My clients are travelers and the Northland entities who are also cross appellants. An award of attorney's fees to the prevailing party on a motion to remand must be denied if the removing party had an objectively reasonable basis to. Mr. Friedman, this is Judge Lagoa. Obviously, pure bills of discovery are novel. They're not used with great frequency in the state of Florida. So there is not a lot of case law regarding the ability to remove a pure bill of discovery to federal court, correct? I would disagree with the proposition that they are novel, but there is not a lot of case law. I agree with that point. However, there are two recent, relatively recent district court cases in the state of Florida allowing the removal of such cases. But I think that was a lead up to another question, which I'll let you ask before. It wasn't objectively unreasonable for you to remove it because there's not cases that suggest otherwise. That is correct. There is no appellate decision which suggests a bill of discovery is not removable. And in fact, your sister circuits have decided that if there is no appellate decision for closing removal, then attorney's fees are inappropriate. In the Williams case, the second circuit, you know, Omega in the Fifth Circuit, and in Amgen in the Seventh Circuit, those all reversed awards of attorney's fees in situations like this, where there was no controlling precedent saying there was no removability. So in fact, had there been an award of attorney's fees in this case, we submit it would have been an abuse of discretion. But clearly here, while we don't agree with the district court's decision to remand, the decision to deny attorney's fees was entirely appropriate. And to the extent I think a question was asked of my colleague, whether four different district judges who seven orders are on appeal all abuse their discretion, they absolutely did not. Let me clarify something about the timeline, which my which my colleagues suggested on Exhibit A to the our appellant brief. We list all the cases from the Florida district courts which have decided these issues. And that Exhibit A shows chronologically that Travelers, my client, was the first to remove one of these cases on February 4th, 2019. At that time, seven bills of discovery cases had been remanded. None of those seven involved in insurers, no fault claims, or the specific kind of liability that alleged here. The first four all remanded for lack of a federal question, not for diversity, which we have here. And the next ones remanded because there was no proof of diversity of citizenship, also not an issue here. We were the very first case to put these specific facts before the district court and ask the district court to find subject matter jurisdiction here. I would ask the court to consider the facts of the specific complaint that are alleged here, which are glossed over by my opponent in his comments. Paragraph four of the complaint in this case says, Medicaid enrollees' accident-related expenses should have been paid in the first instance by defendants. Defendants are liable third parties. There is no question that the complaints in this case allege that the defendants, my clients, are liable. So the question that the district court had to answer was, how much? How much is the amount in controversy? There was no dispute as to diversity. Liability was asserted. And the only thing for the district court to answer was, how much is at issue? Now, what we have here is an instance of artful pleading that plaintiff, I submit, is trying to a little bit slight of hand the court. Plaintiff says we're liable. They say they know from Department of Motor Vehicle crash reports that there are a number of claims for which we're liable for. Yet they don't tell the court how many there are. The court is left to guess, and the defendants are left to put the evidence before the court of how much the defendants are allegedly liable for. And we know from a 2011 report from the Florida Office of Insurance Regulation that the defendants are liable for more than $10,000 per case. We know that. And that's a government report. That's exactly the kind of evidence that this court said in Weinberger v. Race Track Petroleum that the district court can consider in determining the amount of controversy. The sister circuits agree. Krosky from the Ninth Circuit, Stewart from the First Circuit. The court is allowed to look at other cases to figure out whether and how much the amount of controversy is. That's what the court did in Butzberger, which is a Florida district court case involving the removal of a bill of discovery. The district court in Butzberger found diversity jurisdiction because the plaintiff's lawyer in that case had filed a whole bunch of other cases in which he had claimed over $75,000 based on the same kind of injury. All we're doing is the same thing that those courts have done in those cases and said, district court, these cases are worth $10,000 each. Because that's the statutory maximum for the PIP insurance policies. And that's what they're seeking to recover here. This is the court is supposed to apply judicial common sense. That's what this court said in Roe v. Michelin and not allow the plaintiff to artfully plead themselves around federal jurisdiction. Mr. Friedman, this is Judge Wilson. Even if we disagree, it's clear that if it's remanded for lack of subject matter jurisdiction, we're barred from reviewing the remand decision. That's pretty clear, isn't it? Well, we respectfully disagree with that, Your Honor. We think the court on our cross appeal does have jurisdiction to do a de novo review of the remand order. Are you able to cite what's your best case for that proposition? This court's decision in Corporate Management Advisors 561 F. 3rd 1294. What this court said in that case is an appellate review of a sua sponte dismissal for a procedural defect is not barred. This isn't a procedural defect. The court didn't remand it because of a procedural defect. The court said the case should be remanded as the amount in controversy is not sufficiently established to secure federal jurisdiction. And the case law we cited, including Corporate Management Advisors from this court and Ellenberg versus Spartan Motors from the Fourth Circuit, says and explains that when you do not adequately allege amount in controversy or diversity of citizenship, that is a remand for a procedural defect. Let's assume that that's correct. Let's assume you're right about that. How are these remands sua sponte? It was my understanding that the plaintiff filed motions to remand within 30 days of removal. They did, but the motions for remand were based on lack of subject matter jurisdiction, which is the concept we started for the reason that bills of discovery per se are not removable. In fact, that's what the cases that they relied on said. They originally took the position, which they have apparently backed away from a little bit on this appeal, that as a matter of law, bills of discovery, bills of equity are not removable. And respectfully, we've shown that's incorrect. But that basis for the motion. You're saying you're saying if I look through the motions to remand filed by the plaintiff and I haven't looked at him yet, but if I look through them, I'm not going to find them saying that the amount of controversy is not $75,000. You will find a discussion of the amount of controversy and what you will find that they argued is that the amount of controversy can never be met in a bill of discovery case where there is no demand for a specific amount at issue. And in fact, their appellate briefs, their September 30th 2019 brief at page five and their April 16th 2020 brief at page three says that the district court. Their motion was based on a lack of subject matter jurisdiction and not on a defect in removal procedure. They did not move on that basis. And if you read Judge Marino's remand orders in the travelers in Northland cases, the words lack of subject matter jurisdiction never appeared out one time in the order. It's all about the procedural defect. I'll tell you, I appreciate the lawyering that's going on on both sides of this case, but I do feel like that argument is slicing things just a little bit thin. And here's my concern, and I just want you to address this concern. When the plaintiff has filed a timely motion to remand and then the district court remands by granting that motion, right? Not by sua sponte doing something, just by granting the motion to remand that has been filed in a timely manner. It seems very odd for us to read into that and slice very thinly. Well, these are the arguments that the plaintiff made, and these are the things that the district court said in its order. It seems like a better rule for us just to say when a timely motion was filed and when the district court grants the motion and remands and doesn't say something crazy sua sponte, right? That we don't have jurisdiction. What do you think about that rule? I think the power ex-court from the Supreme Court said you're not supposed to look behind the district court's order. And I think this is clearly an order remanding for a procedural defect. But it granted the motion, right? It granted the plaintiff's motion to remand? Obviously, it did. That's why we're here, yes. So by granting the motion to remand, it seems like the district court is saying the plaintiff is correct, I'm granting the motion to remand. And then the stuff that follows after is some explanation, but ultimately the motion to remand was granted. Absolutely. Can't dispute that point. Our argument is there is appellate jurisdiction here because the motion was made on the basis that the federal courts don't ever have diversity jurisdiction over a bill of discovery. That is clearly wrong. Federal courts have had jurisdiction over bills of discovery since the diversity statute was created. And we show that on page 19 and 20 of our reply briefs. There are circuit court cases from the early 1900s addressing bills of discovery and diversity. And so I think if you accept our view that that's the case, this court can reach the removal question de novo. But on the question of attorney's fees, I would only briefly like to address the Martin case and the other cases cited by the plaintiffs suggesting that attorney's fees are appropriate in this case because we submit they are not. The Martin case as well as this court's decision in Legg v. Wyeth and the Bowneye case all indicate that attorney's fees should not be used to discourage defendants like our clients from removing cases in which there is an arguable basis or objectively reasonable basis for removal. And we submit that there is in this case because what we have is simply a case of article pleading in which they've just neglected to identify the number of claims for which they say we are liable. And we have made a reasonable basis for showing those number of claims at $10,000 each in the district court disagreed. I don't think it's fair to say our removal was objectively unreasonable in the circumstance. This is not a case like Taylor v. Newman, Gonzalez v. JCPenney, or Hansard v. Forsythe on which the plaintiffs relied, on which this court affirmed attorney's fees. In each of those cases, the removal was done out of time or to avoid an upcoming hearing or without even researching the plaintiff's diversity of citizenship. None of those factors are present here. None of the district courts found that removal was objectively unreasonable. And plaintiff's suggestion that there were dozens and dozens of cases rejecting the precise facts that these defendants removed on at the time they removed is simply belied by the record and the facts in this case. I think it's clear that there was no abuse of discretion here by the district court in refusing to award attorney's fees. And we submit that if your honors conclude that you can review the district court's orders de novo, there should be no question that this case was removable. And I think the South Florida Wellness decision from this court really answers the issue on both points. In South Florida Wellness, the complaint sought no monetary damages. It was a declaratory judgment act. And in that declaratory judgment act, the plaintiff wanted a declaration that certain language and insurance policies issued by all state did not clearly and unambiguously limit the payments that would be owed under those policies. No money was claimed in that case. And this court found that there was, in fact, the mountain controversy met. It was $5 million in that case because it was a class action. That case both supported our removal and shows that our removal was reasonable. And not only that it was reasonable, but that it was correct. If the panel doesn't have any more questions, I'm happy to yield my last 45 seconds or so. Thank you, Mr. Friedman. Mr. Zincon, you reserve some time for rebuttal. Thank you, Your Honor. With respect to the point as to whether or not there is no controlling precedent, I would submit to the court that that should be just one factor in the ultimate reasonableness inquiry and evaluation. There is no cause for a bright line rule on that issue. And certainly under the circumstances, there was ample notice to defendants that the rule that they were proceeding upon really lacked merit and that there was no basis to claim the satisfaction. With respect to their statement of the case and whether or not there was part completing, I'd respectfully submit to the court that this is part of removal. Really, the defendants had no basis. They offered pure conjecture and back of the napkin calculations that had no basis in actual dispute between parties. And they attempted to support the removal on the basis of completely unrelated comments from one of the counsels for the plaintiff regarding unrelated matters of Medicare, Secondary Payor Act claims, and really completely unrelated mitigated investments and the nature of the business. It was an additional step in seeking the conviction of the court regarding these types of claims, but then in the Ace case, this court saw through many of the same sort of obstructions and recognized that the types of recoveries and actions that are being pursued by this plaintiff have real cost-saving benefits to federal and state programs under Medicare and Medicaid. And they're essentially shouldn't be carried, really shouldn't buy into the characterizations that are going on with the other side. With respect to an offendant, cases that have been relied upon by the defendant, namely Crosky, Weinberger v. Racetrack, Brewer v. Tupperware, ultimately these cases are really are largely misstated. In fact, there were concrete, fact-specific allegations and evidence that were provided to the court in connection with removal, namely both Weinberger and Crosky were age-discrimination cases. On the face of the complaints, the plaintiff has made claims for back pay, front pay, and all sorts of monetary damages that ultimately, in their own right, in meeting the amount of controversy. The South Florida Wellness case, with all due respect to my colleague on the other side, is really, is inapplicable and largely supports the plaintiff's points in this case. That was a fully formed dispute. There was concrete evidence regarding the actual amounts that were collected in the event that a declaratory judgment was awarded. There would be simply one additional step of collecting the $68 million that had been established. There was no, really, there's no likening that case to the type of conjecture that was used. And finally, with respect to the cross-appeal, the defendants, really just travelers and travelers in New York, in this case, into the hall decision are really unpersuasive and really should be excused by the court. In this case, Judge Moreno made clear on the face of his court what he was doing. On the first page, he says that he was granting the plaintiff's motion to remand. The motion to remand, upon its face, sought to remand on the basis of lack of subject matter jurisdiction, complete the challenge up and down, up and down the amount of controversy and speculative nature of the complaint that had been advanced by the court. There is no basis for revisiting those reports. That type of review is plainly barred under Procedure 7B. The court got it right here when it reviewed their decision. Taking a limited look behind the curtain in these cases shows that the judge's reasoning was clear, it was tolerable, and that there is no basis for cross-appeal. That should be dismissed on this decision. I see that I'm over time, and I thank the court for its time this morning and respectfully submit that the defendant, in addition to the court, did not award attorneys to each of the reports and remanded each of the reports to each attorney appropriately. All right. Thank you, counsel. And the court will be in recess for 10 minutes.